Benjamin M. Cappel
AddyHart P.C.
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(732) 991-7285

*Attorney for Preferred Utilities*
*Manufacturing Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PREFERRED UTILITIES MANUFACTURING CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ISP AUTOMATION, INC, <br><br> Defendant. | Civil Action No. <br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Preferred Utilities Manufacturing Corporation ("Preferred Utilities" or "Plaintiff") files this Complaint for patent infringement against Defendant ISP Fuel Systems, a division of ISP Automation, Inc. ("ISP Automation" or "Defendant"). Plaintiff Preferred Utilities Manufacturing Corporation is a corporation organized under the laws of the State of Connecticut, with a principal

1

place of business at 31-35 South Street, Danbury, CT 06810.  On information and belief, ISP Fuel Systems is a division of ISP Automation, Inc., a business organized as a corporation under the laws of New Jersey, with a principal place of business at 9 Chris Court, Suite F, Dayton, NJ 08810.  In support of its Complaint, Preferred Utilities states as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

2.      Preferred Utilities is the owner of all rights, title, and interest in U.S. Patent No. 9,932,981 (the "'981 Patent" or the "Asserted Patent"), attached as Exhibit A.

3.      Defendant has infringed and continues to infringe one or more claims of the '981 Patent by making, using, importing, offering to sell, and selling certain products and services within the United States, including in this District.  Preferred Utilities seeks to recover monetary damages, attorneys' fees, and costs.

## THE PARTIES

4.     Plaintiff Preferred Utilities Manufacturing Corporation is a corporation organized under the laws of the State of Connecticut, with a principal place of business at 31-35 South Street, Danbury, CT 06810.

5.     Preferred Utilities is the true and correct owner of the '981 Patent and holds all right, title and interest in the '981 Patent, including the exclusive right to recover for past infringement.

6.     On information and belief, ISP Fuel Systems is a division of ISP Automation, Inc., a business organized as a corporation under the laws of New Jersey, with a principal place of business at 9 Chris Court, Suite F, Dayton, NJ 08810.

**JURISDICTION AND VENUE**

7.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.     The Court has personal jurisdiction over Defendant for at least the following reasons: (1) Defendant has committed acts of patent infringement in this District and elsewhere in New Jersey; (2) Defendant regularly does business or solicits business in this District and elsewhere in New Jersey, including through their divisions and wholly-owned subsidiary entities; (3) Defendant engages in other

3

persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in this District and elsewhere in New Jersey; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with this District, including the physical location at 9 Chris Court, Suite F, Dayton, NJ 08810, and should reasonably expect to be subject to suit in this District.

9.     Venue is proper in this District as to Defendant ISP Automation under the provisions of 28 U.S.C. §§ 1391 and 1400(b) at least because Defendant ISP Automation has committed acts of infringement in this District and has regular and established places of business in this District at 9 Chris Court, Suite F, Dayton, NJ 08810.

10.     On information and belief, Defendant ISP Automation has employees within this District.   On information and belief, third-party witnesses with knowledge regarding the accused functionality reside within this District.

11.     Defendant ISP Automation has committed tortious acts within New Jersey and this District, and the causes of action set forth in this Complaint arise from those acts.   Defendant ISP Automation develops, manufactures, imports, distributes, and sells competing products that infringe the '981 Patent, which are, and have been imported, offered for sale, sold (directly or through Defendant's distribution network), purchased, and used in New Jersey and within this District.

4

12.     Defendant also places infringing products within the stream of commerce, with the knowledge and/or understanding that such infringing products will be sold and/or used in this District.

## BACKGROUND

13.     The inventors, Dennis W. Cosgrove, David G. Eoff, and Salvatore A. Mola, are all employees of Preferred Utilities and had a duty to assign and did assign their patent rights to Plaintiff.

14.     Between 2017 and 2018, Preferred Utilities investigated and invented a waterproof operating environment for pumps moving fuels from storage tanks to generators.

15.     This invention addressed generator failures in numerous office buildings in New York City after Hurricane Sandy flooded the basements and lower floors, short circuiting the fuel pumps.  In many instances, the fuel storage tanks and fuel pumps were located in the basements of office buildings, while the backup electricity generators were located on the upper floors.

16.     When the basements and lower levels of the office buildings were flooded, the fuel pumps flooded, thus short circuiting and causing the fuel pumps to fail.  Likewise, when the fuel pumps failed, fuel was cut off, and the backup generators failed.

17.    Preferred Utilities' invention created a waterproof operating environment for the pumps, thus ensuring the backup generators supply fuel even when the lower levels of office buildings flooded.  This invention resulted in the '981 Patent.

## U.S. PATENT NO. 9,932,981

18.    On April 3, 2018, the United States Patent and Trademark Office duly and legally issued the '981 Patent, titled "Waterproof Pump Enclosure and System Including Same" after a full and fair examination.

19.    The '981 Patent is valid and enforceable under United States patent laws.

20.    Plaintiff possesses all rights of recovery for monetary damages under the '981 Patent.

21.    The claims of the Asserted Patent are directed to patent-eligible subject matter, not an abstract idea, law of nature, or natural phenomena.

22.    The Asserted Patent generally provides for a waterproof pump and motor assemblies where the pumps generate suction, pulling fuel from storage tanks and discharging fuel under pressure to machinery such as electrical generators.  The '981 Patent also provides for self-adjusting mechanical seals so that the pumps can

be removed from their waterproof housing, repaired, or replaced and slid back into position so that the waterproof housing can be sealed again.

## ISP AUTOMATION'S INFRINGING PRODUCTS AND ACTIVITIES

23.    ISP Automation, through its ISP Fuel Systems division, specializes in fuel pumping, storage and maintenance systems for emergency standby generators and other applications.

24.    ISP Automation has made sales of at least one Accused Product (Exh. B) and likely has made other sales of Accused Products, or at the least offered Accused Products for sale.

25.    The current and previous versions of ISP Automation's Accused Products are non-limiting instances of the Accused Products and practice the claims of the '981 Patent.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,932,981

26.    Plaintiff restates, realleges and incorporates by reference each and every allegation set forth in Paragraphs 1 – 25 of this Complaint.

27.    Defendant has directly infringed and continues to infringe at least claim 1 of the '981 Patent in violation of 35 U.S.C. § 271 *et seq.*, by making, using, offering

for sale, selling in the United States, and/or importing into the United States, without authority or license, the Accused Products.

28. The Accused Products meet all the limitations of at least claim 1 of the '981 Patent.

29. Specifically, claim 1 of the '981 Patent recites:

*A submersible and waterproof enclosure, comprising:*

*a body having a first end and a second end, and an interior region defined between the first end and the second end;*

*a plate covering the second end of the body and forming a seal therewith;*

*a cover configured for removable attachment to the first end of the body;*

*an inlet opening extending through the body or the plate and configured to allow an inflow of a liquid fuel into the interior region from a source of the liquid fuel;*

*a discharge opening extending through the body or the plate and configured to allow an outflow of the liquid fuel from the interior region to a drain of the liquid fuel;*

*a pump and motor assembly operatively connected to the inlet opening and the discharge opening and configured to effect a flow of the liquid fuel from the source to the drain, at least one nipple extending through the body or the plate and affixed to the body or the plate to form a leak-tight seal around a junction between the nipple and the body or the plate;*

8

*a mounting plate affixed to the body and positioned within the interior region of the body thereby defining a substantially horizontal surface therein; and*

*a sliding plate operatively coupled to an upper surface of the mounting plate and configured for substantially horizontal movement between a first position and a second position, the pump and motor assembly operatively connected to an upper surface of the sliding plate, wherein in the first position the sliding plate and the pump and motor assembly is completely within the interior region of the body and in the second position the sliding plate and the pump and motor assembly is at least partially extended outside the interior region of the body, wherein the body has a substantially horizontal center axis;*

*wherein the body and plate with the cover attached enclose the interior region of the body and allow the interior region of the body to remain substantially free of water when the enclosure is totally submerged under water;*

*wherein said nipple allows at least one insulated electrical wire from an external control source to supply power and control to the interior region of the body without allowing water to enter the interior region of the body.*

30.     Plaintiff has identified the infringing claim elements from selected pages from the Accused Products (Exh. B) and have assigned reference letters to the features that correspond with the '981 Patent's claim elements.  Exhs. C and D.

31.     A non-limiting and exemplary claim chart comparing the Accused Products to claim 1 of the '981 Patent is attached as Exhibit E and is incorporated

by reference in its entirety.  Plaintiff reserves the right to modify this description, including, for example, based on additional information learned about the Accused Products obtained during future discovery.

32.    As in claim 1 of the '981 Patent, upon information and belief, the Accused Products include all of the elements of Claim 1.

33.    Upon information and belief, as set forth in the claim chart for claim 1 of the '981 Patent, the Accused Products practice each and every claim element:

| 1.    A submersible and waterproof enclosure, comprising: | Exh. C, p. 21, Reference No.  A<br><br>Exh. D, p. 21, "Submersible Tank – 48" Diameter X 82" Long – Painted Carbon Steel" |
| --- | --- |
| a body having a first end | Exh. C, p. 21, Reference No.  B<br> |
| and a second end, | Exh. C, p. 21, Reference No.  C |

10

|  |  |
|---|---|
| and an interior region defined between the first end and the second end; | Exh. C, p. 21-22, Reference No.  D  Exh. D, p. 21, "Submersible Tank – 48" Diameter X 82" Long – Painted Carbon Steel" |
| a plate covering the second end of the body and forming a seal therewith; a cover configured for removable attachment to the first end of the body; | Exh. C, p. 22, Reference No.  E  |
| an inlet opening extending through the body or the plate and configured to allow an inflow of a liquid fuel into the interior region from a source of the liquid fuel; | Exh. C, p. 22, Reference No.  F  |
| a discharge opening extending through the body or the plate and configured to | Exh. C, p. 22, Reference No.  G |

| allow an outflow of the liquid fuel from the interior region to a drain of the liquid fuel; |  |
| --- | --- |
| a pump and motor assembly operatively connected to the inlet opening and | Exh. C, p. 22, Reference No.  H<br><br> |
| the discharge opening and configured to effect a flow of the liquid fuel from the source to the drain, | Exh. C, p. 22, Reference No.  G<br><br> |
| at least one nipple extending through the body or the plate and affixed to the body or the plate to form a leak-tight seal around a junction between the nipple and the body or the plate; | Exh. C, p. 21, Reference No.  I<br><br> |
| a mounting plate affixed to the body and positioned within the interior region of the body thereby defining a substantially horizontal surface therein; and | Exh. C, p. 21, Reference No.  J |

12

| | |
|---|---|
| |  |
| a sliding plate operatively coupled to an upper surface of the mounting plate and configured for substantially horizontal movement between a first position and a second position, | Exh. C, p. 22, Reference No. K  |
| the pump and motor assembly operatively connected to an upper surface of the sliding plate, | Exh. C, p. 22, Reference No. H  |
| wherein in the first position the sliding plate and the pump and motor assembly is completely within the interior region of the body and | Exh. C, p. 22, Reference No. L  |
| in the second position the sliding plate and the pump and motor assembly is at least partially extended outside the interior region of the body, | Exh. C, p. 22, Reference No. M  |

| | |
|---|---|
| wherein the body has a substantially horizontal center axis; | Exh. C, p. 22, Reference No. N  |
| wherein the body and plate with the cover attached enclose the interior region of the body and allow the interior region of the body to remain substantially free of water when the enclosure is totally submerged under water; | Exh. C, p. 21-22, Reference Nos. B and O  |
| wherein said nipple allows at least one insulated electrical wire from an external control source to supply power and control to the interior region of the body without allowing water to enter the interior region of the body. | Exh. C, p. 21-22, Reference Nos. B and I  |

34.     The Accused Products also infringe dependent claims 2 – 13.

35.     Plaintiff attaches claim charts illustrating the Accused Products infringing dependent claims 2-13 in Exhs. E – Q.

14

## PRIOR CORRESPONDENCE BETWEEN THE PARTIES AND NOTICE

36.   On June 29, 2015, Preferred Utilities wrote to ISP Automation providing notice that Preferred Utilities had filed a utility patent application having U.S. Serial No. 14/633,364 claiming priority to the provisional patent application having U.S. Serial No. 61/647,059.  This patent application later issued as the '981 Patent.  Exh. R.

37.   On July 8, 2015, ISP Fuel Systems [ISP Automation] responded by denying patent notice pursuant to 35 U.S.C. § 287(a), stating that actual notice "requires that a patent must exist" as well as identification of "a specific accused product." Exh. S.

38.   After the '981 Patent issued, Preferred Utilities followed up with an additional letter on May 15, 2018, identifying the issued '981 Patent as well as ISP Fuel Systems [ISP Automation] product Submersible Fuel OIP Pump Set – DPF-7-5-SUB that was submitted on October 24, 2018, to NY Aquarium, a potential customer.  Exh. T.

39.   On September 24, 2018, ISP Fuel Systems [ISP Automation] responded that it had completed "a detailed and lengthy study" concluding that the '981 Patent was invalid and unenforceable pursuant to 35 U.S.C. § 102 and

proclaiming that "any actions taken against my client [ISP Automation] may be subject to Rule 11 sanctions." Exh. U.

40.    The September 24th letter contained no analysis or explanation as to the foundation of its conclusions and failed to identify any specific invalidating prior art.

41.    In addition, the September 24th letter provided no claim charts or any other evidence other to support its conclusory statements that the '981 Patent was either invalid or not infringed.

## DAMAGES

42.    Thus, ISP Automation had notice of the '981 Patent, enabling Preferred Utilities to recover damages for up to six years prior to the filing of this Complaint pursuant to 35 U.S.C. § 286.

43.    Defendant ISP Automation makes, uses, sells, offers for sale and/or imports the Accused Products, which practice at least one of claims 1 – 13 of the '981 Patent.

44.    In violation of 35 U.S.C. § 271, Defendant is now, and has been, directly infringing the '981 Patent, including through its use, testing, sale and offering for sale the Accused Products.

45.    Defendant has had knowledge of infringement of the '981 Patent prior to its issuance and as early as May 15, 2018.

46.    Defendant has directly infringed and continues to directly infringe at least one claim of the '981 Patent by making, using, offering for sale, and selling the Accused Products without authority in the United States.  As a direct and proximate result of Defendant's direct infringement of the '981 Patent, Preferred Utilities has been and continues to be damaged.

47.    By engaging in the conduct described in this Complaint, Defendant has injured Preferred Utilities and is thus liable for infringement of the '981 Patent, pursuant to 35 U.S.C. § 271.

48.    Defendant has committed these acts of infringement without license or authorization.

49.    As a result of Defendant's infringement of the '981 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

50.    Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this

Complaint.  The claim charts depicted in Exhibits E - Q are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

Preferred Utilities demands a trial by jury of any and all causes of action.

## REQUEST FOR RELIEF

Preferred Utilities respectfully requests:

a.  That Judgment be entered that Defendant has infringed one or more claims of the '981 Patent;

b.  An award of damages pursuant to 35 U.S.C. § 284, sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement;

c.  A permanent injunction against the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of the Accused Products.

d.     An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

e.     That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. § 285; and

f.     That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated:  October 11, 2023                    */s/ Benjamin M. Cappel*
                                            AddyHart P.C.
                                            401 North Michigan Avenue
                                            Suite 1200-1
                                            Chicago, IL 60611
                                            (732) 991-7285
                                            benjamin@addyhart.com

                                            OF COUNSEL:

                                            Robert Hart (*pro hac vice* forthcoming)
                                            401 North Michigan Avenue
                                            Suite 1200-1
                                            Chicago, IL 60611
                                            (949) 337-0568
                                            robert@addyhart.com

                                            *Attorneys for Plaintiff Preferred*
                                            *Utilities Manufacturing Corporation*

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable by jury.

Dated: October 11, 2023                     Respectfully submitted,

*/s/ Benjamin M. Cappel*
AddyHart P.C.
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(732) 991-7285
benjamin@addyhart.com

OF COUNSEL:

Robert Hart (*pro hac vice* forthcoming)
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(949) 337-0568
robert@addyhart.com

Andrew J. Buzzi, Esq.
Law Offices of Andrew Buzzi, Jr.
69 North Street
Danbury, CT 06810
(203) 791-9176
ajb@ajblaw.com

*Attorneys for Plaintiff Preferred*
*Utilities Manufacturing Corporation*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiffs that should be joined to this action.  In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated: October 11, 2023                    Respectfully submitted,

*/s/ Benjamin M. Cappel*
AddyHart P.C.
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(732) 991-7285
benjamin@addyhart.com

OF COUNSEL:

Robert Hart (*pro hac vice* forthcoming)
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(949) 337-0568
robert@addyhart.com

*Attorneys for Plaintiff Preferred*
*Utilities Manufacturing Corporation*

21

## LOCAL RULE 201.1 CERTIFICATION

I hereby certify that the above captioned matter is not subject to compulsory

arbitration in that Plaintiff seeks, *inter alia*, injunctive relief.

<u>/s/ Benjamin M. Cappel</u>
AddyHart P.C.
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(732) 991-7285
benjamin@addyhart.com

OF COUNSEL:

Robert Hart (*pro hac vice* forthcoming)
401 North Michigan Avenue
Suite 1200-1
Chicago, IL 60611
(949) 337-0568
robert@addyhart.com

*Attorneys for Plaintiff Preferred*
*Utilities Manufacturing Corporation*

22